Drake D. Hill
Matthew A. Hartford
Beatty, Wozniak & Reese
907 North Poplar Street
Suite 251
Casper, Wyoming 82601
(307) 265-2085 (telephone)
(307) 265-2161 (fax)
    *Attorneys for Eleutian Technology, Inc.*

---

## IN THE UNITED STATES DISTRICT COURT FOR THE

## DISTRICT OF WYOMING

| | |
|---|---|
| ELEUTIAN TECHNOLOGY, INC, a Delaware Corporation, <br><br> Plaintiff, <br><br> v. <br><br> SKYLAKE GLOBAL INCUVEST 1 PRIVATE INVESTMENTS SPECIALTY CO., LTD., a Korean corporation; SKYLAKE INCUVEST & CO., a Korean Corporation; CDI HOLDINGS, INC., a Korean corporation; CHUNGDAHM LEARNING, INC., a Korean Corporation, KEVIN CHOI, an individual; DAEJE CHIN, an individual; SUSAN CHIN, an individual; and MICHAEL KIM, an individual, <br><br> Defendants. | **PLAINTIFF'S MEMORANDUM IN REPLY TO DEFENDANTS' OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION** <br><br><br> Case No. 11-CV-08-D <br><br> Hon. William F. Downes |

Plaintiff Eleutian Technology, LLC ("Eleutian Technology" or "Company") hereby submits this Memorandum in Reply to Defendants' Opposition to Motion for Preliminary Injunction.

## INTRODUCTION

Defendants' opposition is light on facts and peculiarly heavy on mudslinging and unfounded accusations. To clarify the issues now before the Court, this reply memorandum will demonstrate the following:

- Plaintiff has not presented any false filings or affidavits to this Court and is simply addressing this matter in an honest and upright manner in the forum available.

- Mr. Choi has filed an untruthful and misleading affidavit in this matter.

- Mr. Holiday has not "embezzled" any money from the Joint Venture (EK). Payments between EK and Eleutian were agreed to and approved by Mr. Choi himself, and were authorized in writing.

- Defendants removed a very relevant section of the Joint Venture Agreement (JVA) filed with this Court.

- Plaintiff is entitled to a preliminary injunction in this matter, as Defendants have failed to raise any issues, or provide any evidence that its letter writing campaign has any purposes other than to obtain money and destroy Eleutian's customer base.

## I.      RESPONSE TO DEFENDANTS' FACTUAL ALLEGATIONS

**A.      *"Eleutian Technology requests this Court enjoin Korean Companies and Korean nationals with no contacts or connections to Wyoming . . .." Def. Opp, at pg. 2.***

This Court's order relates to Defendants' contacting Plaintiff's customers. Defendants have had extensive business dealings with Wyoming, including; visiting Wyoming for business, entering into agreements with a Wyoming company, and sending threatening letters to a Wyoming company. Holiday Aff, at ¶¶ 5 & 15, attached hereto as Exhibit 3. To summarily state that Defendants have no contacts or connections to Wyoming is simply misleading.

**B.      "Such an order would put Defendants in an unenviable position of having to choose between the conflicting orders of competing sovereigns." Def. Opp., at pg. ;. also see Choi aff par. 36**

This is nonsensical. The Defendants' statement insinuates that in Korea there is a conflicting court order which **requires** Defendants to send threatening letters to disparage Eleutian in the market, thereby creating some sort of "international showdown." However, Defendants produce no such order.

**C.      "Eleutian Technology cannot demonstrate that it will prevail on its claims because the evidence of Kent Holiday's breach of duties as CEO of Eleutian Korea, as well as his embezzlement of its funds is overwhelming." Def. Opp., at Pg. 2.**

First, this argument is mud-slinging. Plaintiff's claims sound in tort, the elements are satisfied, and Defendants caused damage to the Plaintiff, and will cause irreparable damage if injunction does not remain in place.

Second, and more importantly, Defendants' claims of "embezzlement" are wholly untrue and have been created, on advice from counsel, is an *admitted* attempt to obtain money from Plaintiff. Choi aff , at ¶ 34 ("The defendants' sole interest in this matter is to recover monies . . .")

Defendants' "embezzlement" allegations stem from the following set of facts, of which a significant portion has been disturbed byDefendants.

Chung Dahm (CDI), Skylake, and Plaintiff entered into a certain JVA.   EK was the created joint venture entity.  Under the JVA, EK paid Plaintiff ("Eleutian") monthly for all of Eleutian's costs.  Defendants therefore lead this Court to believe that, since EK paid Eleutian large amounts of money monthly, and since Kent Holiday was the CEO of both companies, Kent Holiday therefore "embezzled" funds.

However, what Defendants mask is the fact that **Mr. Choi has only provided a portion of the Joint Venture Agreement attached as Exhibit A to his affidavit and not the entire agreement.**   Defendants' entire "embezzlement" mudslinging falls apart, and the attempt to exact money  is seen for what it is, when the missing "Exhibit A" to the JVA is put in its rightful

3

place.  Defendants' removal of Exhibit A from the JVA prior to filing their brief and not disclosing such a pertinent fact to this Court is distressing.

Attached hereto, as Exhibit 1 is the entire JVA between the parties. Section 2.2.2 of the JVA refers to "Exhibit A (The "Distribution Agreement")".  Exhibit A is indeed the Distribution Agreement, which all Venturers agreed to, and which Mr. Kevin Choi signed on behalf of Eleutian Korea as "Mr. Seongwoo Kevin Choi, Chairman EK"[1].  The Distribution Agreement is an agreement entered into simultaneously with, and was made a part of, the JVA.[2]  The Distribution Agreement appoints EK as the exclusive distributor of **one** of Eleutian's' products. As payment for being the Exclusive Distributor of that product in Korea, Section 2.01 states, in no uncertain terms, that **"EK shall pay EUS [Eleutian] all actual costs of EUS operations ("EUS Costs") throughout the Term of this Agreement.  EUS Costs shall include but not be limited to all cost of sales, wages, operating expenditures, capital expenditures, lease payments, rental payments, benefits, consultant fees, depreciation expense, amortization expense, corporate taxes and fees, etc."**[3]

Indeed, Plaintiff (not Mr. Holiday) did invoice EK on a monthly basis, in accordance with the very detailed instructions of Section 2.04 of the Distribution Agreement.   EK did pay, without qualm or objection, the invoices sent each month by Plaintiff as Mr. Choi had agreed to do in the removed portion of the agreement.  Eventually, EK began to suffer cash shortages and was unable to pay.  EK became insolvent.  Holiday Aff, at ¶ 7.  Upset at the loss of their investment, Defendants, admittedly, huddled with legal counsel, and decided there was money to be made by grabbing the CEO of Eleutian, trumping up a charge that, because he was the CEO

---

[1] Exhbit 1 is the actual entire JVA, which includes a Distribution Agreement as was initialed by the parties.  Exhibit 2 attached hereto is the Distribution Agreement as signed by Mr. Choi.

[2] An illegible copy of the Distribution Agreement can be found attached to Exhibit C of the Choi Aff, which is the demand for arbitration.  However, Choi doesn't even reference it and doesn't disclose that the agreement is actually a part of Exhibit A (the Joint Venture Agreement) to his affidavit. Nor does he make any mention that he expressly authorized and agreed to monthly payments being made from EK to Eleutian.

of both companies, and money was paid from EK to Eleutian, he could be accused of "embezzling" the money. See Def. Opp at 2; also see Choi Aff., at ¶ 34. Defendants' claims that the CEO was prohibited from paying any invoice over $25,000, or incurring debt in excess of $100,000 is, yet again, a red herring. Kent Holiday didn't incur the monthly debt on EK or agree to the paying monthly costs; Kevin Choi did. See Exhibit 2, Section 2.01, and signature page.

Defendants further claim Kent Holiday won't provide them all of the financial information related to EK. It is Mr. Choi who is the Chairman and *Chief Financial Officer* of EK, not Mr. Holiday. Choi Aff, at ¶ 6. Further, If EK seeks financial information from Eleutian regarding the invoices; section 2.01(i) allows an audit of those expenses. EK has made no audit requests. Holiday Aff, at ¶ 8.

Plaintiff have very recently learned (via Defendants' filing) that, after failing to have their original criminal claims acted upon by the Korean authority, Defendants have now decided to bring new criminal claims against Mr. Holiday and expressly requested he be prohibited from leaving Korea. Choi Aff, at ¶¶ 23-24.

This new claim is based on the following: After EK became insolvent, and Plaintiff refused to extend loans for it to meet payroll, Mr. Holiday helped a handful of EK employees gain employment at other companies. Holiday Aff, at ¶¶ 10 -11. Thus enters the accusationof "breach of fiduciary duty for removing all tangible and intangible assets of Eleutian Korea to a third-party in direct competition with the business of Eleutian Korea" Choi Aff, at ¶ 25. Apparently, finding jobs for employees of an insolvent company is just such a crime in the Defendants' mind.

Finally, Mr. Choi testifies "In fact, Kent Holiday had terminated the lease for the Eleutian Korea's Seoul offices and had taken the lease deposit back from the landlord". Paragraph 12 of Mr. Holiday's attached affidavit states that Mr. Choi's testimony on the matter is completely false.

**D.    *April 28 meeting*** Defendants make several claims about an April 28 meeting which could not occur because "Mr. Holiday fled Korea". This assertion is false. Mr. Choi's affidavit doesn't even claim that Mr. Holiday fled the country; in fact, it states the opposite

(compare Opp Memo at 4 to Choi aff , at ¶ 17).   Regardless, neither counsel nor Mr. Choi present the actual facts[4], which are laid out in Mr. Holiday's affidavit.  Holiday aff, at ¶ 13.

## II.    ARGUMENT

*A.    Likelihood of Success on the Merits.*      In their zest to write the word "embezzlement" in their brief as much as possible, Defendants fail to actually respond to the merits.   Plaintiff's request for a Preliminary Injunction is based squarely on its first cause of action, Tortious Interference.  Plaintiff's brief sets out the four elements of a claim for tortious interference as found in Sheaffer v. State, 202 P.3d 1030 (Wyo. 20009), and then walks through each of them.  None of these elements are mentioned or rebutted in Defendants' reply brief.

Instead, Defendants throw out two dispositive procedural arguments.  While Defendants certainly have a right to raise both in a Motion to Dismiss, which can be fully briefed by both parties[5], Plaintiff will, nevertheless, address these two issues in this very limited reply.

*B.    Arbitration.*

Defendants point the Court to Section 11.3.2 of the JVA (Exhibit 1).   However, Defendants fail to mention Section 11.3.1, which states explicitly, "Mediation and arbitration procedures, as set forth in Section 11.3.1 and Section 11.3.2, **shall apply only in cases of dispute wherein a default is alleged** . . ."  Exhibit 1 at 24 (emphasis added). The claims in this litigation are not relating to default. The 10th Circuit, and many other courts have routinely held that limiting language is indeed, controlling. *See, e.g.*, Cummings v. FedEx Ground Package System, Inc., 404 F.3d 1258, 1262 (10th Cir. 2005) (holding where "the parties clearly manifested an intent to narrowly limit arbitration to specific disputes," the court "must take care

---

[4] Defendants cannot possibly list all of the false and misleading items in Mr. Choi's affidavit or Defendants brief in the page limits of this memorandum, and Plaintiff reserves it's objections. There are numerous claims that are simply untrue and misleading in both documents, thus Plaintiff requests  an evidentiary hearing on the matter.

[5] Plaintiff cannot fully reply to two dispositive issues, and address all of the "embezzlement" allegations within the page limit of this non-dispositive brief.  If Defendants raises such issues as dispositive motions, Plaintiff will respond accordingly.

to carry out the specific and limited intent of parties.") ("Under a narrow arbitration clause, a dispute is subject to arbitration only if it relates to an issue that is on its face within the purview of the clause, and collateral matters will generally be beyond its purview."); *See Also* <u>Davis v. Chevy Chase Fin. Ltd.</u>, 667 F.2d 160, 165 (D.C. Cir. 1981); <u>United Steel et al. v. Trimas Corp.</u>, 531 F.3d 531, 536 (7th Cir. 2008).

Further, only one of the eight Defendants is a party to the agreement to arbitrate. In fact, CDI, which was a signatory to the JVA, specifically chose NOT to be a party to such provision. Exhibit 1, Section 11.3.2. Arbitration is a creature of contract. Obviously, an arbitration agreement which does not exist cannot possibly be enforced. *See, e.g.*, <u>Cummings v. FedEx Ground Package System, Inc.</u>, 404 F.3d 1258, 1262 (10th Cir. 2005) (*quoting* <u>AT&T Techs., Inc. v. Comm. Workers of Am.</u>, 475 U.S. 643, 648 (1986)). Arbitration cannot be compelled absent an agreement to arbitrate.

Defendants try to intertwine the AAA arbitration claim Eleutian has made against EK with this matter. Eleutian's claims against EK are separate and distinct from the claims before this Court[6]. EK has been unresponsive to such arbitration demand. Hoiday Aff, at ¶ 9.

## C.    *Jurisdiction*

Defendants summary statement that "All the Defendants are Korean corporations or Korean residents that live and work in Korea" and "None of the Defendants purposefully availed themselves of the laws of this District or the United States" are conclusory in nature and not supported in fact or by the evidence and thus should not be relied upon by the Court. *See* <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937, 1951 (2009) (stating that conclusory "allegations are . . . not entitled to be assumed true."). Defendants fail to present any affidavits regarding the Defendants' contact with Wyoming. *See* <u>Medina v. Four Winds Intern. Corp.</u>, 111 F.Supp 1164, 1166, (D.Wyo. 2000) ("[I]f parties present conflicting affidavits, all factual disputes are resolved in the Plaintiff's favor, and the plaintiff's prima facie showing is sufficient notwithstanding the

---

[6] Eleutian would certainly like to arbitrate this matter between all parties; and is working expeditiously and in good faith to do so. However, despite what Defendants have represented to this Court, there is not currently an arbitration agreement between the parties relating to this dispute.

contrary presentation by the moving party."). Further, the Defendants entered into contracts with, sent communications to, or conducted extensive business with, a Wyoming company. Holiday Aff., at ¶¶ 5 and 15; *see also* Intercon, Inc. v. Bell Atlantic Internet Solutions, Inc., 205 F.3d 1244, 1247 (10th Cir. 2000)("[A]lthough plaintiff bears the burden of establishing personal jurisdiction over defendant, in preliminary stages of litigation this burden is light.") (citations omitted) (*citing* Wenz v. Memery Crystal, 55 F.3d 1503, 1505 (10th Cir. 1995)). Courts recognize that intent to create continuing relationships with citizens of a forum state, by entering into an ongoing contract for example, or conducting business therein, is sufficient to authorize personal jurisdiction in such forum state. *See* Burger King Corp. v. Rudzewicz, 471 U.S. 462, 473 (1985). Defendants also directed their threatening letters to a Wyoming company and all threatening letters were written and resulting in the damage a Wyoming company. Holiday Aff .par 6; *see also* Medina, 111 F.Supp.2d, at 1166 (D.Wyo. 2000) (recognizing that tortious conduct perpetrated outside the forum state causing injury within the forum can serve as a basis for personal jurisdiction) (*citing* Jenner & Block v. District Court, 590 P.2d 964, 965-66 (Colo.1979)). Although some or all of the Defendants can certainly bring a motion to dismiss based on jurisdictional objections at the appropriate time, the evidence (disregarding the conclusory statements) in front of the Court at this time shows that Defendants likely have indeed subjected themselves the jurisdiction of this Court under both a specific, and general jurisdiction theory. *See* Intercon, Inc., 205 F.3d at 1247 ("[W]hen a plaintiff's cause of action does not arise directly from a defendant's forum-related activities, the court may nonetheless maintain general jurisdiction over the defendant based on defendant's business contacts with the forum state.")( *citing* Helicopteros Nacionales de Colombia v. Hall, 466 U.S. 408, 414-416 & n.9 (1984)).

**D.    *Irreparable Harm***

Plaintiffs believe they have, and will continue to lose business and customers based on Defendants actions in this matter if the injunction is not continued.   Holiday Aff., at ¶¶ 17-18

Proving a contract or customer was lost based on Defendants inappropriate letter writing campaign will be extremely difficult, as it will require foreign government officials and other witnesses to agree to voluntarily testify in a United States civil case.   As is noted in its

memorandum on this matter, case law fully supports the supposition that loss of goodwill, market position and customers are all matters which are ripe for an injunction. Plaintiff's claims are not simply about money, Plaintiff is concerned about, and have requested, a permanent injunction.

### E.    *Threatened Injury*

As stated above, Plaintiff faces irreparable harm if the letter writing continues.  The damage is real and substantial and will affect the income of many families here in Wyoming if it isn't stopped. Holiday Aff., at ¶¶ 17 -18.

Defendants have come up with an argument that a Preliminary Injunction prohibiting them from threatening Eleutian's customers and partners in the US and Korea would actually harm them.  Defendants argue that it is Eleutian that seeks to destroy reputations and bully.  As a reminder, the Defendants have: 1) trumped up charges against Mr. Holiday[7] in an attempt to exact money; 2) objected to the filing of documents under seal; 3) sent letters to customers claiming rights they don't have and threatening all with criminal charges; 4) requested and received a two week detention of Mr. Holiday in Korea; 5) filed numerous criminal complaints against Plaintiff's employee . . . And now, they accuse Eleutian of using "bullying tactics against Defendants".

As to Plaintiffs claim of a "$ 9 million" loss based on the "announcement of this lawsuit and the issuance of the Court's TRO, which was leaked to the Korean press."  Def.  Memo at 11.  Plaintiff has again played fast and loose with the facts.

---

[7] Plaintiff brings the Courts attention to Def Opp Memo at bottom of p. 11. Defendants unequivocally state that Skylake has filed criminal charges against Kent Holiday. Defendants have also admitted to being behind and requesting the detention of Mr. Holiday when he entered Korea last month. Korea is very different from the US system. Private parties cannot "charge" individuals with crimes, as Defendants claim they have done (such action is reserved for the prosecutor in the US) and can't request an individual be retained on such charges until they have a meeting with them after they return from vacation- all accomplished ex-parte, without any notice, and without going before a judge. Further, apparently in Korea it is OK to seek money through the filing of criminal charges . . . so long as legal counsel advises you to do such.  See Choi par 34. In America, that is horn book civil extortion.

According to Defendants, Eleutian leaked this Court's issuance of a TRO to a reporter, which caused damages to CDI. Eleutian made no such leak. Holdiay Aff par. 19. Def. Memo at 11. Unfortunately for Defendants, this Court's TRO issued the evening of February 19 in the United States, which would have been February 20th in Korea, thus a reporter couldn't have called regarding the issuance of the TRO on the 19th in Korea. Further, Defendants then claim that Ms. Hee-Na Oh's phone call triggered a reporting requirement in Korea. Choi Aff., at ¶ 32. Perhaps such a claim is true, however, it is astounding that the reporter calling CDI about an event, *and not the event itself*, would trigger such a requirement.

Regardless, the voluntary public announcement made by CDI, has been translated and is before the Court as Exhibit B to Plaintiff's status report. The translated release reveals that CDI didn't actually announce the issuance of this Court's TRO. In fact, Plaintiff is unaware of a single news story in Korea relating to the Court's issuance of the TRO. Holiday Aff, at ¶ 19. Apparently CDI is not required to disclose the TRO, and despite claiming it was leaked, has not provided a single announcement or news story relating to the issuance of the TRO. Further, for the $9 Million in damages, Mr. Choi conveniently took a snapshot of CDI stock price over a period of time of his choosing and then claims that the drop are somehow related to this matter. What Mr. Choi fails to disclose is in the days immediately PRIOR to the Jan. 21 announcement CDI's stock was in a complete free fall. CDI founder, Mr. Kim, apparently secured his home purchase with stock and was attempting to sell a huge portion of his shares without any explanation. See Exhibit 4 attached hereto which is a rough translation of a Jan. 17 "Ms. Hee-Na Oh" article. Exhibit 5, is a snapshot of the CDI stock price from the time period in question. It shows a HUGE decline in Defendant's stock (trading on extraordinary volumes) over several days, including **prior to** the alleged TRO announcement. Defendant's simply do not have any right, as a matter of law, to send false, misleading and threatening communications to Plaintiff's customers. Their argument that they will suffer damages if prohibited from sending such communications should be unpersuasive.

Finally, the public has no interest in Defendants continuing their false and threatening letter writing campaign. The public has an interest in truth and fairness. Dworkin v. LFP, Inc., 839 P. 2d 903, 920 (Wyo. 1992). The public also has an interest in preventing the harm that the

letters have brought and will bring, if the current injunction is lifted and such letters are allowed to be sent in the future.

## CONCLUSION

For the forgoing reasons, Plaintiff respectfully requests this Court issue a Preliminary Injunction.

DATED this 14th day of February, 2011.

By:____s/ Drake D. Hill_____
        Drake D. Hill [Wyo. Att. No. 6-3106]
        Matt Hartford [Wyo. Att. No. 7-4577]
        Beatty, Wozniak & Reese
        907 North Poplar Street, Suite 251
        Casper, Wyoming 82601
        (307) 265-2085 (telephone)
        (307) 265-2161 (fax)

        *Attorneys for Eleutian Technology, Inc.*