Exhibit 3

Declaration of Kent Holiday

Drake D. Hill
Matt Hartford
Beatty, Wozniak & Reese
907 North Poplar Street
Suite 251
Casper, Wyoming 82601
(307) 265-2085 (telephone)
(307) 265-2161 (fax)

*Attorneys for Eleutian Technology, Inc.*

# IN THE UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF WYOMING

| | |
|---|---|
| ELEUTIAN TECHNOLOGY, INC, a Delaware Corporation,<br><br>Plaintiff,<br><br>v.<br><br>SKYLAKE GLOBAL INCUVEST 1 PRIVATE INVESTMENTS SPECIALTY CO., LTD., a Korean corporation; SKYLAKE INCUVEST & CO., a Korean Corporation; CDI HOLDINGS, INC., a Korean corporation; CHUNGDAHM LEARNING, INC., a Korean Corporation, KEVIN CHOI, an individual; DAEJE CHIN, an individual; SUSAN CHIN, an individual; and MICHAEL KIM, an individual,<br><br>Defendants. | **DECLARATION OF KENT HOLIDAY**<br><br><br>Case No. _____<br><br>Judge Downes |

Kent Holiday states as follows:

**EXHIBIT 3**

1. I am over the age of eighteen and am competent to testify regarding the matters stated herein and have personal knowledge of the information set forth below except where it is stated on information and belief.

2. I am, and at all times relevant hereto have been the president of Eleutian Technology, Inc. ("Eleutian Technology").

3. Eleutian Technology, which is based in Ten Sleep, Wyoming, develops and markets computer-based products designed to teach English to non-English speakers.

4. Eleutian Technology's primary and most important market is the Republic of Korea.

5. Some of the Defendants (or their representatives) have actually visited Eleutian's offices in Wyoming and all Defendants have had extensive and ongoing communications with Eleutian in Wyoming via phone calls, e-mails, etc. These defendants include Michael Kim, Chung Dahm, and Skylake.

6. Defendants in this matter have sent at least two threatening letters to Global Cyber Technology, LLC (GCT). GCT is an affiliate of Eleutian's and is a Wyoming Limited Liability Company doing business in the State of Wyoming.

7. Initially the Joint Venture vehicle, Eleutian Korea (EK), did pay the invoices sent each month by Plaintiff as Mr. Choi had agreed to do pursuant to the Distribution agreement. Later, EK began to suffer cash shortages and was unable to pay. Receivables from Defendants got further and further out as EK became insolvent. EK owes Eleutian over $6 MUSD as a result of the Distribution Agreement signed by Mr. Choi.

8. The Distribution Agreement allows EK the right to audit Eleutian costs. Although multiple invitations to audit whatever necessary has been extended by Eleutian to EK, EK has made no audit efforts.

9. In early January 2011, Eleutian instituted arbitration pursuant to the arbitration clause in the Distribution Agreement. I have communicated to Mr. Choi that he would need to cause EK to respond to the arbitration and handle the matter. As far as I know, EK has been unresponsive to the demand for arbitration and to communications relating to the arbitration. I do know there are ongoing discussion regarding mediation and arbitration in this matter.

10. After EK became insolvent, and Eleutian refused to extend additional credit, EK could not meet payroll. I attempted to help some of the employees gain employment elsewhere in the market. Although I was successful in helping a handful of the employees find employment at various companies. Unfortunately I could not find jobs for all of them.

11. Through Defendants' opposition memorandum in this matter, I learned that Defendants have made yet additional and new criminal claims against me in Korea. They did not previously communicate such and I had no notice. These new claims are related to me helping some of the employees of EK find jobs elsewhere in the market after there was no money to pay such employees.

12. I have read Mr. Choi's affidavit in this matter. Mr. Choi's affidavit is false in many, many respects. I absolutely did not take the EK office lease deposit. The refund, which was approximately $35,000 USD, was returned back into the EK general bank account. EK did terminate its lease because it had no money to pay the landlord. Subsequently the one employee left at EK moved to a small office. Further I have not set up any new company and transferred

all the intellectual property, files, and assets of EK to that company. Such a claim is absurd, baseless and defamatory.

13. In the spring of 2010 I was in America. The Korean authority asked if he could meet in April. I told him that I could meet on April 28th. I also told him that I absolutely wanted to make sure he could meet on that date as I would be making a trip to Korea to do so. After we set the date, I provided some additional materials to the Korean authority and, after receiving the additional documentation; the Korean authority cancelled the April 28th meeting.

14. I have made numerous entries and exits to and from Korea after April 28, 2010, all without a problem or delay until very recently when I learned Skylake had made additional claims against me and had requested my detention in Korea. See Choi Aff. Par. 23 and 24. I have never once refused to meet with the Korean authority.

15. The Defendants in this matter have all carried on business with Eleutian. Skylake, CDI and Eleutian entered into a substantive joint venture agreement. Further, representatives from CDI, Skylake and Mr. Michael Kim have visited our offices in Wyoming prior to entering into the joint venture agreement. Up until approximately March 2010, when the Defendants attempted to extort money from me and my company at the Hyatt Hotel in Seoul, I had had substantive and continual business communications, e-mails exchanges, and discussion with them from Wyoming relating to numerous business issues.

16. If Defendants are not enjoined from threatening our customers, partners, and contractors, we will lose additional business and customers.

17. Eleutian has already lost substantial contracts due to Defendants letter writing campaigns and threats to customers. These contracts include at least two Ministry of Education contracts.

18. I sincerely believe that if this Court's current order is not extended into a Preliminary Injunction, and Defendants are allowed to restart their letter writing campaign and threats against our customers and partners, the result is likely to be a swift and complete destruction of Eleutian's market in Korea. The damage is real and substantial and would affect the income of numerous families here in Wyoming. Eleutian has taught over 500,000 lessons in Korea, which is its largest market. And hundreds of employees throughout the State are employed to provide those lessons. Those letters are false, misleading, and are authored and sent by Defendants in what I believe is an attempt to extort money.

19. I, and Eleutian, monitor the Korean press for stories related to Eleutian. I am unaware of a single news story in Korea relating to the Court's issuance of the Temporary Restraining Order. I did not communicate with any reporter regarding the issuance of the TRO and am not aware of any other Eleutian employee doing so.

I declare under criminal penalty of the State of Wyoming and the laws of the United States that the foregoing is true and correct.

EXECUTED on this __14TH__ day of February, 2011.

_____
Kent Holiday