**UNITED STATES DISTRICT COURT**
**DISTRICT OF WYOMING**

---

ELEUTIAN TECHNOLOGY, INC., a
Delaware Corporation,

                     Plaintiff,

       - against -

SKYLAKE GLOBAL INCUVEST 1 PRIVATE
INVESTMENTS SPECIALTY CO., LTD., a
Korean corporation, SKYLAKE INCUVEST &
CO., a Korean Corporation, CDI HOLDINGS, INC.,
a Korean corporation, CHUNGDAHM LEARNING,
INC., a Korean Corporation, KEVIN CHOI, an
individual, DAEJE CHIN, an individual, SUSAN
CHIN, an individual, and MICHAEL KIM, an
individual,

                  Defendants.

11-CV-08-D

**AFFIDAVIT OF JOHN D. LOVI**

---

    JOHN D. LOVI, states as follows:

    1.    I am a member of the New York Bar and the firm of Steptoe & Johnson LLP, counsel for defendant Skylake Incuvest Co. ("Skylake") in the above-captioned matter. I have been admitted to this Court *pro hac vice*. I submit this affidavit in opposition to plaintiff's Request for Entry of Default, dated February 28, 2011.

    2.    Skylake was not properly served with process in this case. Defense counsel told plaintiff's counsel that its purported service on Skylake was defective and suggested, instead, simply to extend the time for Skylake to answer or move against the Complaint until the date that all the other defendants would have to answer/move after being served pursuant to the Hague Convention procedure.

3.      This reasonable request would have obviated the need for plaintiff to serve

Skylake properly under the Hague Convention procedure, and would have efficiently put all

the defendants on the same timetable for motions and related practice under the Federal

Rules of Civil Procedure.

4.      Plaintiff's counsel responded by offering as unhelpful five (5) additional days

to answer/move against the Complaint.  During that same time period, the parties were trying

to negotiate an agreement whereby this entire case would be voluntarily dismissed by

plaintiff in exchange for a procedure whereby the parties could mediate/arbitrate their

disputes.

5.      In retaliation for not accepting the mediation/arbitration terms offered by

plaintiff, this Request for Entry of Default was filed the day after those negotiations failed.

This form of "sharp practices" is not worthy of the attorneys that practice before this Court,

as it furthers a plaintiff campaign of using this Wyoming federal lawsuit to harass and

intimidate the Korean defendants and to cause them to incur unnecessary and wasteful legal

expenses.

6.      Service of process was improper on Skylake because service was made on the

receptionist of the office building where a Skylake consultant works.  The receptionist,

Shelly Shim, is not employed by Skylake or the consultant, and is not authorized to accept

service on behalf of Skylake.  Ms. Shim merely is the receptionist for the many different

offices found at that address.

7.      Furthermore, the Skylake consultant, Mr. Don Soo Suh, that works at the San

Jose, CA office is not a Skylake employee, nor is that office space leased by Skylake.  The

office is leased by SkyLake Advisers U.S.A. ("Advisors USA"), a sole proprietorship owned

and operated by Mr. Suh.

8.      Advisors USA is not owned by or is it a subsidiary of Skylake.  Indeed, the

Consulting Agreement makes clear that the

> Company [Skylake] shall not have or exercise any control or direction over
> the Services performed by Consultant, and will not in any way supervise or
> control his activities.  Consultant shall perform all of the Services herein
> provided for relying on his own experience, knowledge, judgment and
> techniques.  Consultant shall not, in the performance of his duties, be
> managed or advised concerning the same by the Company.  Consultant will
> not be acting as the employee, agent, partner, servant or representative of the
> Company, and Consultant will not have any authority to bind the Company or
> any subsidiary of the Company in any manner.

(A copy of the Consulting Agreement is attached as Exhibit A.)

9.      Under the circumstances, Skylake respectfully requests that this Court not

enter a default against Skylake.

I declare under the penalty of perjury that the foregoing is true and correct.

Dated: New York, New York
       March 1, 2011

                                        _____
                                             John D. Lovi

NY Doc. 28797v1

- 3 -

EXHIBIT A

## CONSULTING AGREEMENT

This Consulting Agreement ("Agreement"), made and entered into this __1_th day of January, 2011, by and between **SkyLake Incuvest & Co.,** a Korean corporation having its principal place of business at 517-10 Dogok-dong, Gangnam-gu, Seoul, Korea (the "Company"), and **SkyLake Advisors U.S.A,** a sole proprietorship owned and operated by Don Soo Suh, a U.S. resident with his address at 3003 North 1st street, #214, San Jose, CA. 95134 (the "Consultant").

~~WITNESSETH~~

WHEREAS, the Company wishes to receive consulting services from Consultant from time to time and Consultant is willing to provide such consulting services, and Company and Consultant wish to enter into this Agreement to set forth the terms and conditions on which services will be provided.

NOW, THEREFORE, the Company and Consultant hereby mutually covenant and agree as follows:

1. <u>Engagement of Consultant</u>.   Consultant is hereby retained by the Company, and Consultant hereby accepts such retainment, as a general advisor and consultant to the Company for the compensation and on the terms and conditions hereinafter expressed. Consultant shall perform such consulting duties as are reasonably assigned to him by the Company in regard to the business of the Company and its affiliates ("Services"). Services will include Consultant's advice, counsel and assistance to be furnished at the reasonable request of the Company from time to time in connection with (i) business expansion into the United States of the companies in which the Company (or the funds managed by the Company) has invested or is considering to invest, (ii) sourcing of potential investment target companies in the United States, (iii) other general matters related to the conduct of the Company's business. Services to be performed by Consultant may require up to 50% of Consultant's time.

2. <u>Consultant's Duties</u>.   Consultant will make himself available for general consultation at all reasonable times by telephone or correspondence, or meetings in the United States on mutually-agreed dates. The Company agrees to give Consultant reasonable notice of what Services it desires and when it desires them to be performed. In that connection, the Company and Consultant agree to cooperate in resolving any scheduling problems that may arise with respect to Consultant being available at the times requested.

3. <u>Compensation for Services</u>.   The Company agrees to pay to Consultant a monthly fee of _____ ıe "Fee") on the 12th day of each month falling within the Term. The Company agrees to pay to Consultant special fee of KRW _____ (the "Special Fee") once within the Term and additionally up to KRW _____ within the Term.

In addition to the Fee, the Company shall reimburse Consultant for all valid out-of-pocket expenses approved by the Company, which shall be reimbursed to Consultant.   The Company may provide Consultant with a corporate credit card for this purpose.



4. <u>Term</u>.    The term of this Agreement (the "Term") shall begin as of January 1, 2011 and remain valid for one (1) year; provided that it may be extended by mutual agreement in writing for additional one-year terms and may be terminated during the Term as provided in Section 6 hereof.

5. <u>Duties of Consultant Relating to Consulting Services</u>.    Consultant shall at all times be acting and performing hereunder as an independent contractor. In connection with the performance by Consultant of Services, the Company shall not have or exercise any control or direction over the Services performed by Consultant, and will not in any way supervise or control his activities. Consultant shall perform all of the Services herein provided for relying on his own experience, knowledge, judgment and techniques. Consultant shall not, in the performance of his duties, be managed or advised concerning the same by the Company. Consultant will not be acting as the employee, agent, partner, servant or representative of the Company, and Consultant will not have any authority to bind the Company or any subsidiary of the Company in any manner.

6. <u>Termination of Agreement</u>.    Notwithstanding that the Term shall not have been completed, the Company may terminate this Agreement (a) upon the death of Consultant, (b) if Consultant should be incapacitated by illness or any other matter from performing his duties hereunder for a continuous period of sixty days, or (c) for cause by delivery by the Company to Consultant of notice specifying such cause. If this Agreement is terminated, the Company shall only be obligated to make payments of Fee due on a pro rata basis to the date of termination.

7. <u>Confidential Information</u>.    Consultant agrees that, during the Term and at all times after the termination of this Agreement for whatever reason, he will treat as confidential and maintain in confidence all information relating to (i) the business of the Company or (ii) investment target companies and investment strategies relating thereto. In addition, Consultant agrees that, without the prior written approval of the Company, he will not disclose any such information at any time to any person, corporation, association or other entity except authorized personnel of the Company or a subsidiary of the Company. Upon the termination of this Agreement for any reason, Consultant will not take or retain from the premises of the Company or any subsidiary of the Company any records, files or other documents, or copies thereof, relating in any way to the business operations of the Company or any subsidiary of the Company.

8. <u>Assignability</u>.    The Company shall have the right to assign this Agreement to any subsidiary of the Company and all covenants and agreements hereunder shall inure to the benefit of and be enforceable by or against said assigns. The rights, benefits and obligations of Consultant under this Agreement are personal to him, and no such rights, benefits or obligations shall be subject to voluntary or involuntary alienation, assignment or transfer.

9. <u>Governing Law; Consent to Jurisdiction</u>.    This Agreement shall be deemed to have been made under, and shall be construed and interpreted in accordance with, the laws of Republic of Korea, without giving effect to its choice of law rules. The parties hereby submit to the exclusive jurisdiction of Seoul Central District Court.



10. Inconsistent Obligations.    Consultant represents and warrants that, at the date of this Agreement, he has no obligations that are inconsistent with those of this Agreement.

14. Sole Agreement.    All prior negotiations and agreements between the parties hereto relating to the transactions, employment and services contemplated hereby are superseded by this Agreement, and there are no representations, warranties, understandings or agreements with respect to such transactions, employment or services other than those expressly set forth herein.

IN WITNESS WHEREOF, the Company and Consultant have executed this Agreement as of the day and year first above written.

Consultant

By: _____
Don Soo Suh
SkyLake U.S.

서울특별시 강남구 삼성동 517-10 4층
스카이레이크 인큐베스트(주)
대표이사 진 대 제

Daeje Chin, Ph.D.
President & CEO

Jan. 13th. 2011