FILED
U.S. DISTRICT COURT
DISTRICT OF WYOMING

JUL 2 3 2011

Stephan Harris, Clerk
Casper

# United States District Court
## For The District of Wyoming

|  |  |  |
|---|---|---|
| ELEUTIAN TECHNOLOGY, INC., a Wyoming Corporation, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 11-CV-08-D |
| | ) | |
| SKYLAKE GLOBAL INCUVEST 1 PRIVATE INVESTMENTS SPECIALTY CO., LTD., a Korean Corporation, SKYLAKE INCUVEST & CO., a Korean Corporation, CHI HOLDINGS, INC., a Korean Corporation, CHUNGDAHM LEARNING, INC., a Korean Corporation, KEVIN CHOI, an individual, DAEJE CHIN, an individual, SUSAN CHIN, an individual, and MICHAEL KIM, an individual, | ) ) ) ) ) ) ) ) ) ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**ORDER GRANTING DEFENDANTS MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**

This matter comes before the Court on Defendant Skylake Global Incuvest Private

Investments Specialty Co., Ltd. (Skylake Global), Skylake Incuvest & Co., CDI Holdings, Inc.,

Chungdham Learning, Inc., Kevin Choi, Daeje Chin, Susan Chin, and Michael Kim's

(collectively, Defendants) Motion to Dismiss  Having considered the parties submissions, the

record, relevant case law, and having heard oral argument, the Court FINDS as follows and orders that the motion be GRANTED.

<h2 style="text-align:center">BACKGROUND</h2>

Plaintiff Eleutian Technology, Inc. (Eleutian) is a Wyoming-based corporation that develops and markets long-distance English language education programs. Skylake Incuvest & Co. (Skylake Incuvest) is a Korean private equity firm with its principle place of business in Korea. Chungdahm and CDI Holdings, Inc. (CDI) are Korean companies that offer educational services. Individual defendant Kevin Choi is the managing director of Skylake Incuvest & Co. (Skylake Incuvest), which manages the investment Skylake Global investment fund. Defendants Daeje Chin and Susan Chin are officers of Skylake Incuvest. Defendant Kim was formerly an officer of CDI.

In April, 2008, Eleutian, Skylake Incuvest, and CDI/Chungdahm entered into a joint venture (Eleutian Korea) "solely for the purposes of selling Eleutian's English language training programs and services within Korea." (ECF 67-8, Pl.'s Mot. in Opp., Ex. E, 2.) The Joint Venture Agreement (JVA) also provided that the agreement was made "in accordance with," and was to be governed by and construed under, "the laws of Korea." *Id.* at 25. CDI entered into a separate services agreement with Eleutian and then assigned that agreement to Eleutian Korea.

Eleutian Korea quickly failed. The falling out apparently has to do with a dispute over $6 million dollars. Eleutian alleges that it is entitled to that money in recompense for expenses

-2-

incurred in operating Eleutian Korea. Defendants maintain that Kent Holiday, CEO of Eleutian and Eleutian Korea, embezzled it. Some time after Eleutian Korea failed, Defendants discovered that former Eleutian Korea employees and Eleutian were distributing services and products formerly offered by Eleutian Korea. Defendants view this as a breach of the JVA, and sent letters to some of Eleutian's business partners to that effect. The letters threaten the recipients with civil and criminal prosecution. Eleutian believes the letters are false, defamatory, and part of a larger scheme to extort a settlement. (The legal dispute over the missing $6 million is in arbitration.) On this belief Eleutian initiated this case, alleging tortious interference with business expectancies and defamation.

Defendants have moved to dismiss pursuant to Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction.[1] They argue that the Court lacks general jurisdiction over them because they do not have continuous and systematic contacts with the State of Wyoming. They further maintain that the Court lacks specific jurisdiction over them because they did not purposefully direct the allegedly tortious and defamatory activities at Wyoming and because the alleged harm does not arise from the Defendants' contacts with Wyoming.

Eleutian argues first that Defendants waived their right to object to personal jurisdiction by defending Eleutian's motion for a preliminary injunction and by voluntarily agreeing to be

---

[1] They also moved to dismiss for lack of subject matter jurisdiction and, with respect to Chungdahm, failure to state a claim. Because the Court finds that it lacks personal jurisdiction over all Defendants, it does not reach these arguments.

subject to sanctions should they violate the "spirit" of the TRO. Eleutian also maintains that general jurisdiction exists because the creation and operation of the joint venture, and everything it entailed, evidences Defendants' continuous and systematic contacts with Wyoming. Finally, Eleutian argues that specific personal jurisdiction exists because Defendants purposefully directed their allegedly tortious and defamatory activities toward Wyoming. Relying primarily on *Calder v. Jones*, 465 U.S. 783 (1984), Eleutian asserts that the test is whether the Defendants (1) intentionally (2) took action aimed at the forum state (3) knowing that the action would cause injury in the forum state. Eleutian maintains that the letters–and some phone calls–satisfy this standard.

### DISCUSSION

To survive a pre-trial motion to dismiss for lack of personal jurisdiction where there has been no evidentiary hearing, a plaintiff need only make a prima facie showing of jurisdiction. *Employers Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1159 (10th Cir. 2010). A plaintiff carries this burden by showing through affidavits and other materials facts that, if true, would support the exercise of jurisdiction. *Id.* (quoting *TH Agric. & Nutrition, LLC v. Ace European Grp., Ltd.*, 488 F.3d 1282, 1286 (10th Cir. 2007)). In evaluating the pleadings, attachments, and affidavits, a court must take as true all well-pled facts alleged in a plaintiff's complaint and resolve all factual disputes in the plaintiff's favor. *Shrader v. Biddinger*, 633 F.3d 1235, 1239 (10th Cir. 2011).

To demonstrate the existence of jurisdiction over a nonresident defendant, a plaintiff must show that the exercise of jurisdiction is legitimate under the laws of the forum state and does not offend the due process clause of the Fourteenth Amendment. *Id.* Wyoming authorizes jurisdiction to the full extent of the federal constitution. WYO. STAT. ANN. § 5-1-107(a). Thus, here the only question is whether the exercise of personal jurisdiction would offend the due process clause of the Fourteenth Amendment.

**I. Waiver/Consent**

### A. Delay in Moving to Dismiss and Effect of Stipulated Order

Eleutian argues that Defendants waived their objection to specific jurisdiction by defending Eleutian's motion for a preliminary injunction and by voluntarily agreeing to abide by, subject to sanctions, the "spirit" of the temporary restraining order that expired March 3. More accurately, Eleutian alleges Defendants consented to the Court's jurisdiction.

Eleutian's argument relies on *Marquest Medical Products, Inc. v. EMDE Corp.*, 496 F. Supp. 1242 (D. Colo 1980), a case in which the court denied a motion to dismiss for lack of jurisdiction because the defendant had impliedly consented to the court's jurisdiction. EMDE believed Marquest had infringed its patent. EMDE sent letters to present and potential customers of Marquest warning them to cease and desist use of the patented product. Marquest sued, alleging tortious interference and seeking a declaratory judgment.

Marquest filed its complaint on January 15, 1980. EMDE twice moved for an extension

of time to answer, and those motions were granted. Before EMDE answered, however, Marquest

moved for a preliminary injunction, asking that EMDE be enjoined from representing that

Marquest had infringed upon its patent. Three days before the hearing on that motion the parties

filed a stipulated order, asking the court to enjoin both parties, Marquest from representing it

owned the product and EMDE from representing Marquest had infringed the patent. The court

granted the motion and adopted the parties' proposed order. Shortly thereafter, EMDE moved to

dismiss for lack of personal jurisdiction. The court denied the motion to dismiss, essentially

finding that EMDE had consented to jurisdiction by failing to answer the complaint before

submitting to the court's authority and by otherwise failing to raise the defense in its first

defensive move.

Although the facts of *Marquest* are strikingly similar to those in this case, there is one

critical difference: Defendants have explicitly preserved their right to object to personal

jurisdiction every step of the way. On January 31, local defense counsel entered a special

appearance for the purpose of contesting the motion for preliminary injunction and personal

jurisdiction. (ECF 20.) During the January 31 hearing on the preliminary injunction, counsel

raised the issue of lack of personal jurisdiction in his response to Eleutian. (ECF 64, Tr. Jan 31,

14-15.) Lead defense counsel raised the issue again on February 8, at which time the Court

declined to hear argument on the issue and instructed the defense to raise it at an appropriate

time. (ECF 65, Tr. Feb. 8, 5.) Finally, the parties' stipulated Order, entered March 3, clearly

contemplated a motion to dismiss: "Defendants agree to waive any claims regarding service of

process and agree that their answers or responses to Plaintiffs Complaint shall be due 21 days

after the mediator informs the Court of an unsuccessful mediation if that is the case." (ECF 47,

Order.) Defendants did not consent to jurisdiction. Rather, they raised it at every opportunity and

preserved their right to answer the complaint.

### B. Defendant CDI and Forum Selection Clause

Eleutian argues that Defendant CDI consented to jurisdiction when it agreed, in a non-

disclosure and non-use agreement that appears to have been executed just prior to negotiation of

the JVA, that in the event of a dispute it would submit itself to the jurisdiction of a Wyoming

State or Federal court. (Pl.'s Mem. in Opp. to Def.'s Mot. to Dismiss.) The clause reads:

> This Agreement shall be governed in all respects by the laws of the State of
> Wyoming and the United States of America as such laws are applied to
> agreements entered into and to be performed entirely within Wyoming between
> Wyoming residents. In the event of a dispute, both Parties agree to submit to the
> jurisdiction of any Wyoming State or Federal Court.

(ECF 67, Pl.'s Memo. in Opp. to Defs.' Mot. to Dismiss, Ex. B, 2.)

The most natural reading of this provision limits its application to disputes arising out of

the non-disclosure and non-use agreement. The provision states that the *Agreement* is governed

by Wyoming and federal law. The disputes here obviously does not arise from the Agreement.

Reading the provision to govern all disputes between Eleutian and CDI would be strange indeed.

Surely the parties did not intend for the provision to apply if, for example, Kent Holiday was involved in a car accident with a CDI employee in Korea. The Court finds that this provision could be prima facie evidence of consent to this Court's jurisdiction only in a case arising from the non-disclosure and non-use agreement. This case does not, and CDI has therefore not consented to this Court's jurisdiction.[2]

## II. General Personal Jurisdiction

Consistent with the Supreme Court's articulation of the requirements of due process, a foreign defendant is amendable to general jurisdiction only if it possesses such continuous and systematic affiliations with the forum that it is "essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, ___ S. Ct. ___, 2011 WL 5218815 at *3 (2011) (quoting *International Shoe Co. V. Washington*, 326 U.S. 310, 316 (1945)).

Eleutian argues that the Court has general jurisdiction over all Defendants because "[b]y doing a joint venture in Wyoming and forming contacts with a Wyoming business," "Defendants benefitted from the laws and protections of Wyoming. Representatives of the Defendants made several visits to Wyoming as party of their business deals with Eleutian Technology, and had *continual* interactions in Wyoming." (ECF 71, Pl.'s Supp. Mem. in Opp. To Defs' Mot. to Dismiss, 3.)

---

[2] Eleutian has implied more than once that CDI violated this agreement by disclosing confidential customer information to Skylake Global so that Skylake Global could target known Eleutian associates with its defamatory letters. Despite these allegations—which do not appear in the complaint—Eleutian did not bring a claim for breach of contract.

Eleutian's allegations are much more specific with respect to CDI. Eleutian alleges that: CDI officials visited Wyoming to conduct due diligence prior to entering into the service agreement; CDI employees traveled to Wyoming to train Eleutian's English teachers how to implement CDI services when communicating with students in Korea; and deposited funds in Wyoming bank accounts. Eleutian further alleged that its Wyoming-based employees have offered more than 200,000 English lessons to CDI students in Korea. The vast majority of these lessons were provided over the internet.

The contacts between CDI and Wyoming are not the kind of continuous and systematic business contacts that give rise to general jurisdiction. The same is true of the other Defendants. Neither the camping trip nor the due diligence visit can be described as "continuous or systematic. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 417 (1984). The fact that CDI wired money to Eleutian's Wyoming-based bank is likewise of little significance. The payments were apparently sent to Wyoming at Eleutian's request, so that Eleutian would not have to pay a Korean tax. CDI had no particular reason to care what bank received its payments. Eleutian's request that CDI send funds to a particular bank therefore has no bearing on whether CDI engages in continuous and systematic activities within the forum state. *See id.* (finding it significant that defendant had no interest in banking within the forum).

Eleutian's reliance on CDI's training of Eleutian's teachers and the English lessons are equally unavailing. CDI essentially purchased Eleutian technology and the service of Eleutian's

teachers. The Supreme Court has held that "mere purchases, even if occurring at regular intervals, are not enough to warrant a State's assertion of in personam jurisdiction over a nonresident corporation in a cause of action not related to those purchase transactions." *Id.* at 418. The training was part of the transaction. Moreover, CDI did not train Eleutian teachers in order for them to implement particular teaching methods in Wyoming. It trained the teachers how to implement CDI methods *in Korea*, even though the teachers physically remained in Wyoming.

Even if the English lessons are more properly analyzed as discrete transactions over the internet, rather than as a bulk purchase of a particular product, the result is the same. In addressing personal jurisdiction in that context, the Tenth Circuit has reasoned that the operation of a web service will subject a defendant to general personal jurisdiction only when the defendant has actually and deliberately used its website to conduct commercial transactions on a sustained basis such that the defendant has an "approximate physical presence" in the forum. *Shrader*, 633 F.3d at 1243 (quoting *Bancroft & Masters, Inc. v. Augusta Nat'l, Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000)).

Here, the entity conducting transactions on a sustained basis is Eleutian, and the forum in which it is conducting those transactions is Korea. The product being sold is an English lesson, and that product is being delivered from Wyoming to Korea. The Court finds that it does not have general personal jurisdiction over Defendants.

### III. Specific Personal Jurisdiction

Specific jurisdiction depends on an affiliation between the forum state and the underlying controversy. *Goodyear Dunlop*, ___ S. Ct. at *3. That is, "specific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction. *Id.* (quotation and citation omitted). The controversy here arises from two alleged activities. First, "some or all Defendants have knowingly, purposefully and systematically interfered with Eleutian Technology's business relationships with its U.S. and Korea business associates." (ECF 1, Compl., 5.) Second, "some or all Defendants defamed Eleutian Technology by publishing false and injurious information about Eleutian Technology." *Id.* at 6.

Specific jurisdiction exists if: (1) the foreign defendant purposefully directed its activities at residents of the forum state; and (2) the plaintiff's injuries arise out of the defendant's forum-related activities. *Shrader v. Biddinger*, 633 F.3d 1235, 1239 (10th Cir. 2011) (citing *Calder v. Jones*, 465 U.S. 783 (1984)).

In the context of the transmission of an allegedly defamatory statement,"purposeful direction" consists of three elements: (1) an intentional action (such as writing and delivering a letter) that was (2) expressly aimed at the forum state with (3) knowledge that the brunt of the injury would be felt in the forum state. *Id.* (quoting *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1069-70 (10th Cir. 2008)).

Eleutian's argument that Defendants expressly aimed their activities at Wyoming hinges on two alleged facts: Skylake Global sent at least one defamatory letter to a Wyoming Corporation, Global Cyber Technology (GCT); and Defendants initiated several threatening telephone calls received by Wyoming-based Eleutian employees. (ECF 67, Pl.'s Mem. in Opp. to Defs.' Mot. to Dismiss, 10-11.) These facts do not establish a prima facie case that Defendants expressly aimed their activities at Wyoming.

First, the alleged threatening phone calls are irrelevant to Eleutian's claims for tortious interference or disparagement and are therefore irrelevant to the existence of specific jurisdiction. Eleutian does not allege that the phone calls somehow discouraged potential business partners from engaging Eleutian. It also does not explain how telephone calls to its own employees could be defamatory. The phone calls might be tangentially related to Eleutian's indirect assertion that Defendants have conspired to extort a settlement from Eleutian, but Eleutian did not allege that harm in its complaint. It alleged tortious interference and disparagement.

Second, the letter sent to GCT was addressed to a Korean individual and sent to a Korean address. (ECF 54, Mem. of Law in Supp. of Defs' Mot. to Dismiss, Aff. of Seungwoo Kevin Choi, Ex. D.) The address line reveals the letter was sent to Lee Hoon-Sang, Global Cyber Technology, Desiang Building 4th floor, 560 Dohwa-Dong, Mapo-Gu, Seoul. The letter was not directed at Wyoming, but merely to a Wyoming-based corporation (a distinction that is

-12-

conspicuously absent from Eleutian's briefing materials). The letter makes no reference to Wyoming and nothing suggests it was delivered to Wyoming.

Even if, as Eleutian argues, the physical destination of the letter is not dispositive, *see Dudnikov*, 514 F.3d at 1075, the content of the letter confirms the letter was not expressly aimed at Wyoming. The letter's purpose was to alert GCT that it had infringed on what Defendants believed was Eleutian Korea's exclusive right to distribute Eleutian products in Korea. Skylake Global sought to curtail GCT's purchase, and Eleutian's sale, of those products in Korea.

The express aiming test focuses on a defendant's intentions. With respect to a letter, the key is "the 'focal point' of its purposive efforts." *Dudnikov*, 514 F.3d at 1074. Skylake Global's purposive effort was to curtail GCT's purchase, and Eleutian's sale, of Eleutian services within the Korean marketplace. The letter was therefore expressly aimed at Korea, not Wyoming. *See Dudnikov*, 514 F.3d at 1075 (holding that letter sent to California for the purpose of influencing activity in Colorado was "expressly aimed" at Colorado).

### B. Arising Out of Forum-Related Activities

Having found that the Defendants did not purposefully direct the  allegedly defamatory letters that gave rise to Eleutian's claims for tortious interference with business expectancy and defamation at Wyoming, the only remaining forum-related activities that can be fairly charged to any Defendant relate to the joint venture. Eleutian does not allege harm arising out of these

activities. The Court concludes that it cannot, consistent with the Constitution, exercise specific personal jurisdiction over Defendants.

CONCLUSION

For the reasons stated above, the Court finds that Eleutian has failed to make a prima facie showing that the Court can exercise personal jurisdiction over the foreign Defendants. Accordingly, the case shall be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(2).

THEREFORE, it is ordered that case number 11-CV-08-D be DISMISSED.

IT IS SO ORDERED.

DATED this 20th day of July, 2011.

United States District Judge